**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| JESUS F.G.C.,[1] | ) Case No. CV 17-8187-JPR |
| | ) |
|     Plaintiff, | ) |
| | ) **MEMORANDUM DECISION AND ORDER** |
|     v. | ) **REVERSING COMMISSIONER** |
| | ) |
| NANCY A. BERRYHILL, Acting Commissioner of Social Security, | ) |
| | ) |
|     Defendant. | ) |

**I.   PROCEEDINGS**

Plaintiff seeks review of the Commissioner's final decision denying his applications for disability income benefits ("DIB") and supplemental security income benefits ("SSI"). The parties consented to the jurisdiction of the undersigned under 28 U.S.C. § 636(c). The matter is before the Court on the parties' Joint Stipulation, filed July 30, 2018, which the Court has taken under submission without oral argument. For the reasons stated below, the Commissioner's decision is reversed and this action is

---

[1] Plaintiff's name is partially redacted in compliance with Federal Rule of Civil Procedure 5.2(c)(2)(B) and the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States.

1

remanded for further proceedings.

**II. BACKGROUND**

Plaintiff was born in 1976. (Administrative Record ("AR") 34, 183, 187.) Though he can "read and understand" English, he prefers communicating in Spanish. (AR 207.) He apparently completed high school and possibly some college in Mexico.[2] (AR 209.) He testified that he last worked as a "supervisor" or "manager" of a sports bar. (AR 45.)

On December 3, 2013, Plaintiff applied for DIB, alleging that he had been unable to work since August 17, 2013, because of left-tibia fracture, "[d]iabetes," hypertension, "[c]holesterol," and "[h]eart [c]ondition." (AR 183-86, 208; see also AR 21.) On December 12, 2013, he applied for SSI, alleging the same. (AR 187-92, 208; see also AR 21.) His applications were denied (see AR 76-106), and he requested a hearing before an Administrative Law Judge (AR 111-12). A hearing was held on April 21, 2016, at which Plaintiff, who was represented by counsel and aided by a Spanish-language interpreter, testified, as did a vocational expert. (See AR 42-75.) Leslie Saavedra, an unlicensed social worker who had worked with Plaintiff, also testified. (AR 62-66.) In a written decision issued June 2, 2016, the ALJ found Plaintiff not disabled. (AR 21-36.) Plaintiff sought Appeals Council review (AR 180-82, 262-64; see also AR 9-13), which was

---

[2] Plaintiff seemed confused during the hearing about the level of schooling he had completed in American terms but clearly stated that he did not go to college. (See AR 47-48.) He marked that he had finished four years of college in his disability report (see AR 209), however, and told the consulting psychiatrist that he completed 12th grade and attended the University of Mexico (AR 444).

2

denied on September 27, 2017 (AR 1-8). This action followed.

**III. STANDARD OF REVIEW**

Under 42 U.S.C. § 405(g), a district court may review the Commissioner's decision to deny benefits. The ALJ's findings and decision should be upheld if they are free of legal error and supported by substantial evidence based on the record as a whole. See Richardson v. Perales, 402 U.S. 389, 401 (1971); Parra v. Astrue, 481 F.3d 742, 746 (9th Cir. 2007). Substantial evidence means such evidence as a reasonable person might accept as adequate to support a conclusion. Richardson, 402 U.S. at 401; Lingenfelter v. Astrue, 504 F.3d 1028, 1035 (9th Cir. 2007). It is more than a scintilla but less than a preponderance. Lingenfelter, 504 F.3d at 1035 (citing Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir. 2006)). To determine whether substantial evidence supports a finding, the reviewing court "must review the administrative record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion." Reddick v. Chater, 157 F.3d 715, 720 (9th Cir. 1998). "If the evidence can reasonably support either affirming or reversing," the reviewing court "may not substitute its judgment" for the Commissioner's. Id. at 720-21.

**IV. THE EVALUATION OF DISABILITY**

People are "disabled" for purposes of receiving Social Security benefits if they are unable to engage in any substantial gainful activity owing to a physical or mental impairment that is expected to result in death or has lasted, or is expected to last, for a continuous period of at least 12 months. 42 U.S.C. § 423(d)(1)(A); Drouin v. Sullivan, 966 F.2d 1255, 1257 (9th Cir.

3

1992).

   A.   The Five-Step Evaluation Process

The ALJ follows a five-step evaluation process to assess whether a claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995) (as amended Apr. 9, 1996). In the first step, the Commissioner must determine whether the claimant is currently engaged in substantial gainful activity; if so, the claimant is not disabled and the claim must be denied. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i).

If the claimant is not engaged in substantial gainful activity, the second step requires the Commissioner to determine whether the claimant has a "severe" impairment or combination of impairments significantly limiting his ability to do basic work activities; if not, the claimant is not disabled and his claim must be denied. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii).

If the claimant has a "severe" impairment or combination of impairments, the third step requires the Commissioner to determine whether the impairment or combination of impairments meets or equals an impairment in the Listing of Impairments set forth at 20 C.F.R. part 404, subpart P, appendix 1; if so, disability is conclusively presumed. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii).

If the claimant's impairment or combination of impairments does not meet or equal an impairment in the Listing, the fourth step requires the Commissioner to determine whether the claimant

has sufficient residual functional capacity ("RFC")³ to perform his past work; if so, he is not disabled and the claim must be denied. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). The claimant has the burden of proving he is unable to perform past relevant work. Drouin, 966 F.2d at 1257. If the claimant meets that burden, a prima facie case of disability is established. Id. If that happens or if the claimant has no past relevant work, the Commissioner then bears the burden of establishing that the claimant is not disabled because he can perform other substantial gainful work available in the national economy. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v); Drouin, 966 F.2d at 1257. That determination comprises the fifth and final step in the sequential analysis. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v); Lester, 81 F.3d at 828 n.5; Drouin, 966 F.2d at 1257.

B. The ALJ's Application of the Five-Step Process

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since August 17, 2013, the alleged onset date. (AR 23.) At step two, he concluded that Plaintiff had severe impairments of "history of fracture to left knee, status post open reduction internal fixation; history of left leg fracture; diabetes mellitus; left wrist strain; left elbow sprain; left ankle sprain; headaches; lumbar strain; hypertension; mood disorder; and anxiety disorder." (Id.) At step three, he determined that Plaintiff's impairments did not

---

³ RFC is what a claimant can do despite existing exertional and nonexertional limitations. §§ 404.1545, 416.945; see Cooper v. Sullivan, 880 F.2d 1152, 1155 n.5 (9th Cir. 1989). The Commissioner assesses the claimant's RFC between steps three and four. Laborin v. Berryhill, 867 F.3d 1151, 1153 (9th Cir. 2017) (citing § 416.920(a)(4)).

5

meet or equal a listing. (AR 24-26.) At step four, he found that Plaintiff had the RFC to perform light work[4] with the following limitations:

> [Plaintiff can] stand[] or walk[] for two hours with use of assistive device for prolonged ambulation; perform occasional postural activities, but no ladders, scaffolds, or ropes; avoid unprotected heights or dangerous machinery; no repetitive or forceful pushing, pulling, gripping, grasping, squeezing, holding and torqueing with the left upper extremity (right hand dominant); . . . perform non-complex routine tasks, but no tasks requiring hypervigilance, responsibility for the safety of others, or significant public interaction.

(AR 26.) The ALJ found that Plaintiff could not do any past relevant work. (AR 33.) But at step five, he determined that given Plaintiff's age, education, work experience, and RFC, he could perform three "representative" jobs in the national economy. (AR 34-35.) Thus, the ALJ found Plaintiff not disabled. (AR 35-36.)

---

[4] "Light work" involves "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." §§ 404.1567(b), 416.967(b). The regulations further specify that "[e]ven though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls." Id. A person capable of light work is also capable of "sedentary work," which involves lifting "no more than 10 pounds at a time and occasionally lifting or carrying [small articles]" and may include occasional walking or standing. §§ 404.1567(a)-(b), 416.967(a)-(b).

6

**V. DISCUSSION**[5]

Plaintiff argues that the ALJ erred by discounting his subjective pain statements, rejecting the opinions of psychiatrist Pedro Florescio and social worker Saavedra, and ignoring his alleged depression at step two. (See J. Stip. at 2-3.) As discussed below, remand is necessary based on the ALJ's improper evaluation of Plaintiff's subjective statements. Accordingly, the Court does not reach the other issues.

    A.   <u>The ALJ Did Not Properly Evaluate Plaintiff's Subjective Symptom Testimony</u>

Plaintiff claims that the ALJ "fail[ed] to provide specific, clear or convincing reasons for rejecting [his] subjective complaints." (J. Stip. at 11.) As explained below, because one of the at most two reasons the ALJ gave for partially discounting Plaintiff's subjective symptom statements and testimony was not supported by substantial evidence and the other was insufficient by itself, remand is necessary.

---

[5] In <u>Lucia v. SEC</u>, 138 S. Ct. 2044, 2055 (2018), the Supreme Court recently held that ALJs of the Securities and Exchange Commission are "Officers of the United States" and thus subject to the Appointments Clause. To the extent <u>Lucia</u> applies to Social Security ALJs, Plaintiff has forfeited the issue by failing to raise it during his administrative proceedings. (See AR 262-64; J. Stip. at 2-6, 9-11, 14-15); <u>Meanel v. Apfel</u>, 172 F.3d 1111, 1115 (9th Cir. 1999) (as amended) (plaintiff forfeits issues not raised before ALJ or Appeals Council); <u>see also generally</u> <u>Kabani & Co. v. SEC</u>, 733 F. App'x 918, 919 (9th Cir. 2018) (rejecting <u>Lucia</u> challenge because plaintiff did not raise it during administrative proceedings); <u>Davidson v. Comm'r of Soc. Sec.</u>, No. 2:16-cv-00102, 2018 WL 4680327 (M.D. Tenn. Sept. 28, 2018) (same).

7

1. Applicable law

An ALJ's assessment of a claimant's allegations concerning the severity of his symptoms is entitled to "great weight." Weetman v. Sullivan, 877 F.2d 20, 22 (9th Cir. 1989) (as amended) (citation omitted); Nyman v. Heckler, 779 F.2d 528, 531 (9th Cir. 1985) (as amended Feb. 24, 1986). "[T]he ALJ is not required to believe every allegation of disabling pain, or else disability benefits would be available for the asking, a result plainly contrary to 42 U.S.C. § 423(d)(5)(A)." Molina v. Astrue, 674 F.3d 1104, 1112 (9th Cir. 2012) (citing Fair v. Bowen, 885 F.2d 597, 603 (9th Cir. 1989)).

In evaluating a claimant's subjective symptom testimony, the ALJ engages in a two-step analysis. See Lingenfelter, 504 F.3d at 1035-36; see also SSR 16-3p, 2016 WL 1119029, at *3 (Mar. 16, 2016).[6] "First, the ALJ must determine whether the claimant has

---

[6] The Commissioner applies SSR 16-3p, which went into effect a few months before the ALJ issued his decision, on June 2, 2016, to all "determinations and decisions on or after March 28, 2016." Soc. Sec. Admin., Policy Interpretation Ruling, SSR 16-3p n.27, https://www.ssa.gov/OPHome/rulings/di/01/SSR2016-03-di-01.html (last visited Jan. 16, 2019). Though the new ruling eliminates the term "credibility" and focuses on "consistency" instead, Plaintiff refers to his "credibility" (J. Stip. at 2), and much of the relevant case law uses that language too (see, e.g., id. at 10 (discussing applicable case law)). But as the Ninth Circuit has clarified, SSR 16-3p

> makes clear what our precedent already required: that assessments of an individual's testimony by an ALJ are designed to "evaluate the intensity and persistence of symptoms after [the ALJ] find[s] that the individual has a medically determinable impairment(s) that could reasonably be expected to produce those symptoms," and not to delve into wide-ranging scrutiny of the claimant's character and apparent truthfulness.

Trevizo v. Berryhill, 871 F.3d 664, 678 n.5 (9th Cir. 2017) (as

presented objective medical evidence of an underlying impairment [that] could reasonably be expected to produce the pain or other symptoms alleged." Lingenfelter, 504 F.3d at 1036. If such objective medical evidence exists, the ALJ may not reject a claimant's testimony "simply because there is no showing that the impairment can reasonably produce the _degree_ of symptom alleged." Smolen v. Chater, 80 F.3d 1273, 1282 (9th Cir. 1996) (emphasis in original), superseded in part by statute on other grounds, §§ 404.1529, 416.929.

If the claimant meets the first test, the ALJ may discount the claimant's subjective symptom testimony only if he makes specific findings that support the conclusion. See Berry v. Astrue, 622 F.3d 1228, 1234 (9th Cir. 2010). Absent a finding or affirmative evidence of malingering, the ALJ must provide a "clear and convincing" reason for rejecting the claimant's testimony. Brown-Hunter v. Colvin, 806 F.3d 487, 493 (9th Cir. 2015) (as amended) (citing Lingenfelter, 504 F.3d at 1036); Treichler v. Comm'r of Soc. Sec. Admin., 775 F.3d 1090, 1102 (9th Cir. 2014). If the ALJ's evaluation of a plaintiff's alleged symptoms is supported by substantial evidence in the record, the reviewing court "may not engage in second-guessing." Thomas v. Barnhart, 278 F.3d 947, 959 (9th Cir. 2002).

Contradiction with evidence in the medical record is a "sufficient basis" for rejecting a claimant's subjective symptom testimony. Carmickle v. Comm'r, Soc. Sec. Admin., 533 F.3d 1155, 1161 (9th Cir. 2008); see also Morgan v. Comm'r of Soc. Sec.

---

amended) (alterations in original) (quoting SSR 16-3p).

Admin., 169 F.3d 595, 600 (9th Cir. 1999) (upholding "conflict between [plaintiff's] testimony of subjective complaints and the objective medical evidence in the record" as "specific and substantial" reason undermining statements). But it "cannot form the sole basis for discounting pain testimony." Burch v. Barnhart, 400 F.3d 676, 681 (9th Cir. 2005); Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001) (citing then-current version of § 404.1529(c)(2)).

        2. Relevant background

            a. *Plaintiff's statements*

In his December 2013 SSI application, Plaintiff apparently indicated that he did "not need help in personal care, hygiene or upkeep of a home." (AR 188.) And he purportedly reported to the consulting examining psychiatrist that he was able to "do cooking, shopping, and housekeeping." (AR 445.) But in his August 2014 appeal of the initial finding of nondisability, he wrote that he "require[d] assistance to bathe/dress and use restroom," and "someone ha[d] to cook for [him] and buy [his] groceries/necessities." (AR 243.)

Similarly, in his June 4, 2014 function report, Plaintiff stated that he took care of his teenaged son by "mak[ing] sure he [went] to school, and ha[d] his meals," but he clarified that he could not "do it physically." (AR 231; see also AR 54 (Plaintiff testifying that as of April 21, 2016 hearing date, his son was 18).) Rather, his roommate actually took the son to school, made his meals, and helped him with laundry, groceries, and school assignments. (AR 231.) Plaintiff required help with his own dressing, bathing, sitting on the toilet, and doing laundry.

10

(Id.) He couldn't "ben[d]" or "walk" and had "difficulty moving [his] left arm." (Id.) The roommate helped him with personal grooming because he lacked motivation. (AR 232.) Plaintiff also needed help remembering to take his medication. (Id.) He did not do any cooking and was "not able to do any[]" house or yard work. (Id.) For outings, his friend took him or he used accessible transportation. (AR 233.) He went to church two or three times a week, saw doctors, and had visits from his mother. (Id.; see also AR 234.) He could not go out alone because he needed "help moving, walking down and upstairs [sic]." (AR 233.) He could not drive or shop, but he could handle his financial affairs. (Id.) He was starting to "do groceries" once a week since he had begun receiving "Cal Fresh," but he went with his son, a caregiver, or a friend. (AR 234.) He got along "well" with his family, friends, and neighbors but "d[id]n't see friends only family" and "g[o]t sad and uncomfortable seeing others." (AR 235.)

Plaintiff marked that he had trouble "[l]ifting, [s]quatting, [b]ending, [s]tanding, [r]eaching, [w]alking, [s]itting, [k]neeling, [s]tair-[c]limbing, [s]eeing, [m]emory, [c]ompleting [t]asks, [c]oncentration, [u]nderstanding, [f]ollowing [i]nstructions, [u]sing [h]ands [specifying "left hand"],[7] [and] [g]etting [a]long with [o]thers," and he wrote that he "g[ot] 'depressed.'" (Id.) In response to questions about how well he followed spoken directions and got along with authority figures, he wrote, "I am OK." (AR 235-36.) But he

---

[7] Plaintiff is right-handed. (AR 235.)

didn't handle stress well; he was "starting to get anxious mood every day" and "worried about everything." (AR 236.) He checked boxes indicating that he used crutches, a walker, a wheelchair, and a "[b]race/[s]plint," all of which "were [recommended] by doctor in USC" after he was injured in August 2013. (Id.) He used the aids "every day, all times." (Id.)

At the April 2016 hearing, Plaintiff testified that his knee did "not bend" and that he had "weakness." (AR 49.) The physical therapy was helping "[a] little," but for "long periods" he still used a wheelchair and a "crutch" or "walker" otherwise. (AR 50-52.) He left his home only to go to "therapy,"[8] "church two times a week," and "the doctor's." (AR 51.) He indicated that despite "[l]ots of [mental health] treatment," he still felt "sad," had thoughts of suicide "[a]t times," slept "very little," and cried "[a]ll the time." (AR 52-53.) He did not socialize with friends, and he apparently went to a "private place" for church prayers, not a mass service. (AR 53-54.) His friend and his son, with whom he lived, helped him "a lot" by giving him "massages, sometimes therapy"; taking him to doctors; checking his blood pressure and sugar; and reminding him to take his medicine. (AR 54.) They also fed him, changed his diapers,[9] and did his laundry. (AR 54, 58.) He testified that he "never" went to the store and spent most of his time "sitting" at home. (AR

---

[8] At some point, Saavedra and other clinic providers began sometimes seeing Plaintiff in his home rather than at the clinic. (See, e.g., AR 550, 618, 667.)

[9] Plaintiff was apparently incontinent, although the cause was unknown. (See AR 30; cf. AR 560 (Plaintiff reporting to Saavedra that he urinated on himself because he was afraid he'd fall while using restroom).)

12

55.) Sometimes, his mother visited him. (AR 57.) He testified to anxiety and flashbacks and suggested that because he "always ha[d] pain," he always thought about his problems. (AR 55-56.)

      b. *The ALJ's findings relating to Plaintiff's subjective symptom statements*

 The ALJ found that Plaintiff's impairments had "more than a minimal effect on [his] ability to function" (AR 24), but they "could not reasonably be expected to cause the alleged symptoms" (AR 28). Further, his "statements concerning the intensity, persistence and limiting effects of these symptoms [were] not entirely consistent with the medical evidence and other evidence in the record." (Id.) The ALJ expressly stated only one reason for discounting Plaintiff's statements concerning his symptoms, their inconsistency with the objective medical evidence, but he also observed in that same general discussion that some of Plaintiff's statements were inconsistent with his activities of daily living. (See id.; see also generally AR 26-33.)

 In analyzing Plaintiff's statements and testimony, the ALJ recounted them and the evidence allegedly undermining them at length. (See AR 27-31.) As to Plaintiff's physical limitations, he found that Plaintiff "and his clinical social worker endorse debilitating symptoms that are not supported by objective medical evidence." (AR 28.) For example, he wrote, "[t]hey indicate that [Plaintiff] is essentially bedridden and unable to lift his arms to reach for objects . . . [but] he is able to go to the grocery store, attend church weekly, and go to medical and psychiatric appointments." (Id.) He noted Plaintiff's two accidents but found his reported "level of functioning" "not

13

reasonable considering that he has healed." (Id.) And "[d]espite many subjective complaints of pain at earlier pain management sessions," his "actual functioning ha[d] significantly improved." (AR 29.) He found that "[r]ecent physical therapy notes . . . indicate that [Plaintiff] has met his goal of increasing his range of motion, increasing his lower extremity strength, standing and walking for more than 30 minutes with minimal pain and use of an assistive device, and ability to transfer positions." (Id.)

As to Plaintiff's mental limitations, the ALJ found that "[d]espite extreme subjective complaints of depression, [he] has never been hospitalized for mental health reasons." (AR 31.) He noted that Plaintiff "continues to be able to socialize with those close to him and attend church regularly." (Id.) He was also "able to go to the grocery store in the evening and attend his doctor's appointments." (Id.)

### 3. Analysis

Plaintiff may be right that the ALJ provided only one reason for discounting his subjective symptom statements: their alleged inconsistency with the objective medical evidence. (See J. Stip. at 11.) That is certainly the only one he expressly articulated. (See generally AR 28.) If so, remand is necessary on that basis alone. See Burch, 400 F.3d at 681. But even if the Court extrapolates another reason from the ALJ's discussion — that Plaintiff's daily activities were inconsistent with his alleged symptoms — remand is still warranted, as explained below.

a. *Activities of daily living*

The ALJ noted that some of Plaintiff's activities of daily living were inconsistent with the alleged degree of his symptoms, at least as to his mental health.[10] (See AR 31.) An ALJ may discount a claimant's subjective symptom testimony when it is inconsistent with his daily activities. See Molina, 674 F.3d at 1113. "Even where those [daily] activities suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment." Id.

On several occasions, the ALJ's decision did not accurately or completely reflect the record concerning Plaintiff's activities. For example, the ALJ wrote that Plaintiff was "able to . . . attend church regularly," "go to the grocery store in the evening," and "attend his doctor's appointments." (AR 31.) But the record does not show that Plaintiff was capable of doing any of those things (or any other activities of daily living) without significant help from a caregiver, friend, or adult son. (See, e.g., AR 54-55, 231-35.) Even with their help, his activities were apparently limited. (See AR 54-55 (Plaintiff testifying that he mostly sat at home while his friend and son cooked for him, did his laundry, drove him to appointments and church, changed his diapers, and reminded him to take medications)); see also Smolen, 80 F.3d at 1284 n.7 ("The Social Security Act does not require that claimants be utterly incapacitated to be eligible for benefits, and many home

---

[10] At step three, the ALJ found that Plaintiff was moderately limited in his activities of daily living. (AR 25.)

15

activities may not be easily transferable to a work environment . . . ."). Moreover, Plaintiff apparently did not attend church in the traditional sense, but rather went to a "private place" where he could "pray individually." (AR 53-54.)

Likewise, the ALJ's representation that Plaintiff "takes care of his son, including preparing him for school, overseeing his meals, and seeing to his other needs" leaves out Plaintiff's critical qualification that he did none of those things "physically"; rather, he directed his roommate, who was the one to actually care for the son. (AR 231.) Further, by the time of the hearing Plaintiff's son was an adult, and he appeared to take care of his father, not the other way around. (See AR 54.)

And the same recent physical-therapy report the ALJ cited as evidence that Plaintiff had met "his goal" in various areas (see AR 29 (citing AR 962-65)) also states that he had "[s]evere [l]imitation" in walking and "[s]tairs" (AR 962), and some of his limitations had worsened or failed to improve even after four months of physical therapy (see, e.g., AR 963 (showing left-knee range-of-motion extension decreasing), 964 (showing hip and spine range-of-motion measurements remaining stagnant)). The physical therapist noted that he had "not made as much improvement as expected" and that what improvement he had made generally did not last beyond "the end of the visit." (AR 964.) And although Plaintiff had indeed met some goals, as the ALJ noted (see AR 29), they were almost all short- or midterm goals, a fact the ALJ neglected to mention; he had not met any of his "[l]ong [t]erm" goals nearly a year after his second accident (AR 965).

Although the ALJ may have believed Plaintiff capable of

doing more activities based on the objective medical evidence, the record consistently showed that he was unable to care for himself or do regular daily activities in a meaningful way. (See, e.g., AR 54-55, 231-35.)  The ALJ appears to have relied primarily on the consulting psychiatrist's note that Plaintiff "reported being able to cook, shop, and perform housekeeping" for support.  (AR 30 (citing AR 445).)  But given that the doctor communicated with Plaintiff through an interpreter (AR 442), the statement's inconsistency with the rest of the record, and the ALJ's own discounting of the doctor's opinion (AR 32-33), that note is not substantial evidence of Plaintiff's daily activities. Also, the doctor saw Plaintiff only once; other treating professionals with much longer treatment histories consistently recorded notes indicating that Plaintiff was not able to do those things on his own or, as to some of them, even with help (see, e.g., AR 580, 667), and Plaintiff repeatedly wrote and testified that he was unable to care for himself or engage in daily activities (see, e.g., AR 54-55, 231-35).

Therefore, to the extent the ALJ relied on Plaintiff's activities of daily living as a reason for discounting his subjective symptom testimony, he erred in doing so.  See Diedrich v. Berryhill, 874 F.3d 634, 643 (9th Cir. 2017).

> b.  *Inconsistency with medical evidence*

The only potentially valid reason the ALJ gave for discounting Plaintiff's subjective symptom statements and testimony was their alleged inconsistency with the medical record.  (See generally AR 28.)  But "an ALJ may not reject a claimant's subjective complaints based solely on a lack of

medical evidence to fully corroborate the alleged severity of pain." Burch, 400 F.3d at 680; see also Robbins, 466 F.3d at 883 ("While an ALJ may find testimony not credible in part or in whole, he or she may not disregard it solely because it is not substantiated affirmatively by objective medical evidence."); Gama v. Colvin, 611 F. App'x 445, 446 (9th Cir. 2015) (when one reason ALJ gave for discounting plaintiff's credibility was erroneous and "only remaining reason . . . was a lack of objective medical evidence," "error was not harmless"). Thus, Plaintiff is entitled to remand on this ground regardless of whether the ALJ was correct that the severity of Plaintiff's pain allegations was not substantially supported by the objective evidence.

### B. Remand for Further Proceedings Is Appropriate

When an ALJ errs, as here, the Court "ordinarily must remand for further proceedings." Leon v. Berryhill, 880 F.3d 1041, 1045 (9th Cir. 2017) (as amended Jan. 25, 2018); see also Harman v. Apfel, 211 F.3d 1172, 1175-78 (9th Cir. 2000) (as amended). The Court has discretion to do so or to award benefits under the "credit as true" rule. Leon, 880 F.3d at 1045 (citation omitted). "[A] direct award of benefits was intended as a rare and prophylactic exception to the ordinary remand rule[.]" Id. The "decision of whether to remand for further proceedings turns upon the likely utility of such proceedings," Harman, 211 F.3d at 1179, and when an "ALJ makes a legal error, but the record is uncertain and ambiguous, the proper approach is to remand the case to the agency," Leon, 880 F.3d at 1045 (citing Treichler, 775 F.3d at 1105).

Here, further administrative proceedings would serve the useful purpose of allowing the ALJ to give proper consideration to Plaintiff's subjective symptom testimony. See Arredondo v. Colvin, No. CV 15-01927-RAO, 2016 WL 3902307, at *7 (C.D. Cal. July 18, 2016) (remand "rather than an award of benefits" appropriate when only valid reason ALJ gave for discounting plaintiff's subjective pain testimony was "lack of supporting objective evidence"). If the ALJ chooses to discount Plaintiff's subjective symptoms on remand, he can then provide an adequate discussion of the reasons why. See Payan v. Colvin, 672 F. App'x 732, 733 (9th Cir. 2016). Because of Plaintiff's recent improved physical functioning in some areas, as noted by the ALJ (see AR 29); the documented connection between his physical and emotional conditions (see, e.g., AR 573, 592); and his varying abilities as he healed from two separate accidents separated by two years, the Court has serious doubt as to whether Plaintiff was disabled during any or all of the relevant period. For this reason, too, remand is appropriate. See Garrison v. Colvin, 759 F.3d 995, 1021 (9th Cir. 2014) (recognizing flexibility to remand for further proceedings when "record as a whole creates serious doubt as to whether the [plaintiff] is, in fact, disabled").

Because the contested medical opinions were based to a large degree on Plaintiff's subjective symptom statements (see J. Stip. at 7, 8; see also AR 31 (ALJ noting same)) and the ALJ improperly assessed those statements, he should on remand reconsider the weight to give those opinions. Similarly, he should clarify whether he finds Plaintiff's alleged depression to be a severe impairment and, if not, explain why not.

Accordingly, the Court does not reach those issues. See Hiler v. Astrue, 687 F.3d 1208, 1212 (9th Cir. 2012) ("Because we remand the case to the ALJ for the reasons stated, we decline to reach [plaintiff's] alternative ground for remand.")

## VI. CONCLUSION

Consistent with the foregoing and under sentence four of 42 U.S.C. § 405(g),[11] IT IS ORDERED that judgment be entered REVERSING the Commissioner's decision, GRANTING Plaintiff's request for remand, and REMANDING this action for further proceedings consistent with this memorandum decision.

DATED: January 18, 2019

JEAN ROSENBLUTH
U.S. MAGISTRATE JUDGE

---

[11] That sentence provides: "The [district] court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing."